RAFAEL M. GONZALEZ JR.
ACTING UNITED STATES ATTORNEY
KASSANDRA MCGRADY, IDAHO STATE BAR NO. 8455
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST., SUITE 500
BOISE, ID 83702
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 1:21-CR-00112-DCN |
| Plaintiff, | ) |
| | ) |
| v. | ) GOVERNMENT'S MEMORANDUM IN |
| | ) SUPPORT OF PRETRIAL DETENTION |
| JOEL WATERS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

The United States of America, by and through Rafael M. Gonzalez Jr., Acting United

States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho,

submits this memorandum in support of its Motion for Detention, filed on April 22, 2021. (ECF

4). This Court should order the Defendant detained, as he represents a danger to the safety of

community and he is a flight risk.

### INTRODUCTION

On November 19, 2020, the State of Idaho charged the Defendant via complaint with one

felony count of Stalking in the First Degree in violation of Idaho Code § 18-7905, and an arrest

warrant was issued. Investigators with the Boise Police Department (BPD) arrested the

Defendant on December 24, 2020.  The state court ordered the Defendant held on a $1,000,000

bond.  He remained in state custody until his appearance in U.S. District Court.

On April 14, 2021, the Grand Jury returned an Indictment charging the Defendant with

one count of Interstate Stalking in violation of 18 U.S.C. § 2261A(1) and one count of

Cyberstalking in violation of 18 U.S.C. § 2261A(2) (ECF 1). Each count in the Indictment

contains a special allegation that a portion of the Defendant's conduct occurred in violation of a

protection order that was issued in Wallowa County, Oregon. (ECF 1). The state charges were

dismissed once the Grand Jury returned its Indictment.  The Government filed a motion for

detention (ECF 4), the Defendant appeared for arraignment on April 23, 2021, and a detention

hearing is scheduled for April 28, 2021.

The Defendant should remain detained pending trial.  A detention hearing is authorized

because (1) the Defendant is charged with crimes of violence under the Bail Reform Act, (2) a

serious risk exists that the Defendant will flee, and (3) a serious risk exists that the Defendant

will threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate the victim A.W.

*See* 18 U.S.C. § 3156(a)(4)(B). *See also United States v. Harrison*, 354 F. Supp. 3d 270, 278

(W.D. N.Y. 2018) (finding that cyberstalking categorically is a crime of violence under Bail

Reform Act); *United States v. Grooms*, No. 3:15-mj-00025, 2015 WL 1982097, at *5 (S.D. W.

Va. Apr. 29, 2015) (Bail Reform Act implicitly recognizes that stalking and cyberstalking are

crimes of violence); *United States v. Shrader*, No. 1:09-cr-00270, 2010 WL 503092, at *3 (S.D.

W. Va. Feb. 8, 2010) (same); *United States v. Neuzil*, No. 09-CR-2020-LRR, 2009 WL 2030373,

at *2 (N.D. Iowa July 13, 2009) (same).

Moreover, the nature and circumstances of the Defendant's offenses, the weight of the

evidence against the Defendant, the Defendant's character, and the nature and seriousness of the

danger posed by the Defendant's release all weigh in favor of an order of detention. The facts underlying the Defendant's charged offenses, and his history and characteristics, establish by clear and convincing evidence that no conditions or combination of conditions of release can reasonably assure the safety of the community and by a preponderance of the evidence that the Defendant is a flight risk.

PROFFER OF FACT[1]

The victim in this case is A.W., an adult female. The Defendant and A.W. began dating in November of 2017 and were married in May of 2018. They have no children in common, but the Defendant has two children from previous relationships. In April of 2019, the Defendant and A.W. moved from Boise, Idaho, to Wallowa, Oregon. The Defendant and A.W. resided together in a home in Wallowa.

In approximately May of 2020, the relationship became unstable. A.W. reported to law enforcement that the Defendant has a history of past methamphetamine use. A.W. suspected that the Defendant started using methamphetamine again beginning in approximately March of 2020. In September of 2020, the Defendant started monitoring A.W.'s calls and text messages through the Verizon Wireless application. Things continued to escalate and on September 21, 2020, A.W. and the Defendant had a verbal altercation. During the altercation, the Defendant took A.W.'s cellphone and wallet. A.W. decided she wanted a divorce and left the residence in the Red Ford Escape that she shared with the Defendant. A.W. drove to Boise to stay with her parents. A.W. left without her cellphone because the Defendant had possession of it. Upon her arrival in Boise, A.W. began using a new cellphone and the Defendant was able to obtain the phone number. The

---

[1] The facts proffered herein are established by the investigation of the Boise Police Department and the Federal Bureau of Investigation, and evidence presented to the Grand Jury, which resulted in the Indictment in this case. The investigation of the Defendant is on-going.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 3

Defendant kept contacting A.W. to talk about their relationship. The Defendant sent A.W. numerous emails from the email address joelwaters97@gmail.com, expressing how A.W. had wronged him in the relationship and repeatedly requesting that A.W. talk to him about their relationship.

On October 5, 2020, a security guard at A.W.'s place of employment witnessed the Defendant enter the property and place an iPad and note on A.W.'s vehicle. The security guard told the Defendant to leave the property. The security guard observed the Defendant leave the property and position his vehicle in a place where he could observe the parking lot where A.W.'s vehicle was parked. The security guard documented his observations in a security report. The Defendant's behavior caused A.W. to apply for the protection order in Oregon.

### *A.W. obtained a protection order issued in Oregon*

On October 5, 2020, Wallowa County, Oregon, granted A.W. a protection order. The order directed the Defendant to refrain from any contact with A.W., to include electronic communications, and to remain 300 feet from A.W. and her parent's residence in Boise, ID, as well as the residence she shared with the Defendant in Wallowa. The order was served on the Defendant on October 9, 2020 and is valid until October 5, 2021.

Starting in October of 2020, BPD began investigating the Defendant for violating the protection order and then ultimately for stalking A.W. On October 7, 2020, A.W.'s mother contacted BPD to report that A.W.'s dog was taken from inside of their Boise residence. A.W. also reported that her laptop was stolen from the residence. A BPD officer contacted the Defendant and informed him that there was a protection order out of Wallowa County that needed to be served on him. The BPD officer also spoke to the Defendant about the missing dog.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 4

The Defendant admitted to taking the dog from the residence, but stated that the dog was in the yard and not inside of the residence. The Defendant denied that he entered the residence.

On October 8, 2020, the day after he was informed that A.W. had obtained a protection order, the Defendant went to the Ada County Courthouse and filled out an ex-parte petition for a protection order against A.W. In the petition, the Defendant alleged that on October 8, 2020, A.W. used Facebook to send him harassing messages. In the petition, the Defendant also alleged that A.W. hacked into his accounts and changed his passwords. The Ada County court granted the Defendant's request for a protection order. In the petition for the protection order, the Defendant listed his email address as joelwaters97@gmail.com.

When A.W. was interviewed by law enforcement, she denied that she sent the Facebook messages to the Defendant that he used to obtain the protection order. A.W. provided BPD with an email that was sent from joelwaters97@gmail.com to her email account on October 9, 2020 with the subject line "Last talk." The email states as follows (A.W.'s name has been replaced with her initials in the text of the email):[2]

> So we have one last opportunity to talk thats it. If we dont talk tomorrow then we are for sure getting a divorce and going to have a huge battle all the way through it. I heard you possible got a no contact order against me and I got one against you. I also pressed charges against you for assault. So if you want to continue to have this battle you will end up not working in hospitals and this whole battle is going to suck. So are you going to talk before either one of us get served these papers or are we going at eachother. You need to me know ASAP otherwise it is what it is. [A.W.] I dont want to do it this way but you went to the cops and filed so I did too. As soon as you get home you will be served as well. Is all this easier then having that talk with me ive been waiting so long for already. This is your last chance if not sorry but you push hard i push hard this is going to end bad. So just come talk to me

---

[2] All typos in this email, and the other emails described in this memorandum are found in the original email message. In all of the emails referenced in this memorandum, A.W.'s name has been replaced with her initials. There are numerous emails that BPD has collected as part of this investigation. Not every email is referenced or included in this memorandum. A sample of the emails have been provided to give the Court insight into the nature of the communications.

On October 9, 2020, the Defendant was served with the protection order in Wallowa, Oregon. On October 12, 2020. A.W. was served with the Ada County protection order. On October 14, 2020, A.W. and her attorney attended a hearing on the protection order in Ada County. The Defendant requested an attorney and the hearing was re-set until October 28, 2020. The Defendant failed to appear at the hearing on October 28, and the Ada County protection order was dismissed. However, the Oregon protection order remains in effect.

### *The Defendant violated the Oregon protection order by contacting A.W.*

On October 28, 2020, A.W. went to the residence in Wallowa and took possession of a Nissan Titan truck that was titled in her name. Inside of the truck, A.W. located her laptop computer that had previously been taken from her parent's residence. A.W. drove the truck to Boise and dropped it off at mechanic's shop in Boise.

On October 29, 2020, A.W. contacted BPD to report that the Defendant had violated the Oregon protection order. A.W. told the BPD that the Defendant had sent her multiple e-mails and a video in the last few days. A.W. provided some of the emails that she had received. One email is dated October 28, 2020 and was sent to A.W. from joelwaters97@gmail.com. A portion of the email states as follows:

> If I don't hear a word from you by the end of the day then I promise with every bit of my word that I will be gone [A.W.] If you turn me in I will be gone. Even if they do catch me that can't keep me for ever. Once I get out I will still end myself because I don't believe in divorce.
> ……………………………………………………………………………..[3]
> Why do you want me to die. If it's to be single again then fine just don't contact me. I haven't been on drugs since I went to jail. But have been in a real low spot in my life. I've put the rope around my neck a dozen times already. Tried to kill myself in jail But I really ready now if your not coming back or willing to talk to me then you will be making funeral plans by the end of the weekend I can promise you that [A.W.]

---

[3] A break in the text of the email has been denoted with "………."

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 6

Another email is dated October 28, 2020, and was sent to A.W. from joelwaters97@gmail.com

A portion of the email states as follows:

> On Sunday November 1st your going to get a call that they just found your husband. I have the date time and place I'm going to do it. I have the song I'm going to listen too. I have the pictures that I'm going to look at. I have everything set. I'm tired of fighting and am ready to do it. Instead of the trip I had planned for us this winter I had most of the money saved. I'm taking my own trip out of this world. I'm sorry for everything but you knew this was going to happen.

Another email is dated October 28, 2020, and was sent to A.W. from

joelwaters97@gmail.com. The email reads as follows:

> I did change it was you at the end who changed. I was happier it was you who wasn't. It was you who wouldn't share your life or us. You hid everything and blame it all on me. How dare you. What you did ended up killing me. Silent treatment. Silent treatment. Silent treatment The dumbest thing anyone has ever done. It killed me. You killed me. You just succeed in taking everything I had left. I was nice and didn't go the hearing earlier.

On October 29, 2020, the day after A.W. took possession of the Nissan truck, A.W.

received an email with the subject line "Going down" from joelwaters97@gmail.com. A portion

of the email states:

> You think you can take everything without me coming for it. Well my pickup has gps. The escape has gps and just a few weeks ago the Saturn was equipped with gps. You tried taking all three of our vehicles and leave me none. Well now I'm going to get them all back. I know you seen me at the gas station pulling away in my pickup. You locked eyes with me. I'm already getting it back [A.W.]. I will get everything back. You will get yours [A.W.].. You have betrayed me. Took all the vehicles and the dogs and [name of the Defendant's child].[4] You think I'm just going to sit back and watch all that happen. I though you knew me better than that. You decided we are not going to talk or give me the respect to sit down with you and discuss anything. Well I don't respect you any longer now then either. So what comes around goes around. You want to be abusive towards me. You hit me more then once does that mean I get to as well. Or your actions have been pretty aggressive. Should I do the same. You better watch what you do to me because it could come back to get you. I'm in boise and give you until noon to give me my things back. Otherwise I take full action into receiving my things back. You are

---

[4] The Defendant's child is a minor and therefore no identifying information is set forth in this memorandum.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 7

going to jail now A.W. for everything. I've already pressed the assault charges. Now I'm pressing those drug charges against you. You started it I'm ending it. – Joel Waters

A.W. told the BPD officer who responded to her call that the Red Ford Escape in her possession was registered in both her and the Defendant's names, but she also had a Nissan truck that she purchased before her marriage to the Defendant. A.W. stated the title to the truck was in her maiden name. A.W. told the officer she believed the Defendant was in Boise and feared for her safety.

The BPD officer called the Defendant via telephone. The Defendant claimed they purchased the truck during their marriage and "he has every right to it." The officer asked the Defendant if he sent the recent e-mails to A.W. The Defendant denied sending them. He accused A.W. of using his iPad, which he claimed was in her possession, to send the messages to herself using his e-mail account. The Defendant denied he was in Boise. He offered to have friend talk to the officer to verify his location. The officer stated his friend's statement over the phone would not prove his whereabouts. The Defendant called the officer a "douche," then ended the call.

The officer asked A.W. about the Defendant's iPad. A.W. confirmed she had two iPads that belonged to the Defendant, but she had given them to her attorney, Lisa Eckstein, in Le Grande, OR. The officer called Eckstein, who confirmed the iPads were in her custody. Eckstein explained A.W. wanted her to return the devices to Defendant's attorney.

### *The Defendant is a suspect in the vandalism of A.W.'s vehicle in Boise*

On November 3, 2020, a BPD officer responded to A.W.'s parent's residence in Boise where A.W. was staying. A.W. stated an unknown individual had slashed the tires of her Ford Escape, her mother's Saturn SL1 and her step-father's Subaru Outback and Toyota RAV4. There

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 8

were no witnesses to the vandalism. The officer took photographs of the vehicles' tires to document the destruction of property. A.W. stated she had served the Defendant with divorce papers on November 2, 2020, and she believed he had perpetrated the vandalism. The officer attempted to contact the Defendant via telephone, but he did not answer.

Afterward, a BPD officer found a report by the Ada County Sheriff's Office (ACSO) filed in 2017 by the Defendant's ex-wife, who was married to the Defendant before A.W. After the ex-wife filed for divorce, she was granted a protection order against the Defendant. In 2017, the Ada County Sheriff's Office responded to ex-wife's apartment complex after she reported all four tires on her vehicle had been slashed. An ACSO deputy contacted the Defendant, who denied committing the vandalism. The BPD officer also found a report by the ACSO that the Defendant had violated the ex-wife's protection order in 2018.

A.W. also provided BPD with an email she received on November 2, 2020, with the subject line "Joke," that was sent from watersjoel@hotmail.com. A portion of the email reads as follows:

> I like how you think I'm joking about this. I'm not [A.W.] but go ahead and send the emails to your lawyer and then talk to mine. I heard today you officially have filed for divorce. You signed them and I'm gone. I'm not joking you will see for yourself tomorrow. [A.W.] you wanted me gone. You did everything you could to hurt me. Well you knew what you were doing. You knew when you signed those papers. Well goodbye I have about 3 hours left then I start the process.

A.W. did not repair the tires on the Ford Escape and instead began driving her mother's vehicle. On November 13 or 14, 2020, the Red Ford Escape was taken from A.W.'s parent's residence.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 9

*The Defendant continued to contact A.W.; threatened to commit arson in Oregon*

On November 10, 2020, A.W. contacted BPD to report that the Defendant had lit their home in Oregon on fire. She also reported that the Defendant had continued to violate the protection order by sending her emails. A.W. provided the officer with several emails that she received.

One of the e-mails is dated Nov 6, 2020, with the subject line "Ruin my life" and was sent from watersjoel@hotmail.com. A portion of the email reads as follows:

> I have told you more then once that if you won't talk to me and want to try and ruin my life I can do the same thing. Well you got it. I will be gone but I have ensured that your years to come will not be fun either now. You brought down my world on top of my head will yours is going to do the same thing within the next week or two. It will all play out. Then you will know how I felt and what you did to me for no reason. Just because of a conversation. Enjoy your next couple of weeks. Then I bet your fell the same as I do and how did this all happen. I have had weeks to plan this now and you deserve every bit of it. You have no heart. Well I have decided to act like you did. I won't ever be around to watch it all unfold. But I do know your not gonna know what to do or how come this is happening to you just like I have been feeling. But it's all your own damn fault.

Another e-mail is dated November 10, 2020, with the subject line "Re: Still going for my throat" and was sent from joelwaters97@gmail.com. The e-mail contained the following text:

> you plan on testifying against me at trial now huh. That it I'm going to hang myself this very second. You are the meanest wife I have ever met. You a f you alone made it so I can never trust another person and you and you alone made me kill myself. You are a horrible person. Now I have decided to burn down the house you are just a evil bitch. Karma will get you. I fucking loved you now I fucking hate you. I hope you burn in hell for what you did to me. All I ever did was love you and this is how you repay me well I hope you get hunted down. Your truly an evel bitch. Goodbye whore. Enjoy fucking over the next unlucky bastard that your going to cheat on next. Keep your fucking legs closed. Try that why don't ya. You fuckkng killed me. You didn't even try and understand or talk to me about it. You could hearted dirty hitch. I'm glad I'm getting way from someone like you. Good luck on getting insurance for the house now. You don't get a fu king dime.

### *A.W. is the victim of arson at the Oregon residence shared with the Defendant*

The fire at A.W.'s residence in Oregon that she previously shared with the Defendant is currently under investigation by authorities in Oregon. The FBI has received photographs that were taken by Oregon Mutual Insurance Company after the fire in Oregon. The photographs show fire damage to the house. The photographs also how that there were several messages throughout the residence that were written in what appears to be spray paint. The messages are addressed to A.W. or the Defendant's child. The following is a description of some of the messages that appear in the photographs. One message on the inside of the garage door reads: "(A.W.'s  name) I love you" and "3 year anniversary." The other garage door reads "Betrayal" and "We could have just talked." The door leading from the garage to the inside of the residence reads "(A.W.'s name) killed me."  A room in the residence had messages that read "(the Defendant's child's name) I love you" and "I choose you to hold me at night." Photographs of the residence are attached to this Memorandum as Exhibit 1.[5]

A.W. also provided BPD with an email that she received on November 12, 2020 with the subject line "Your fault" that was sent from joelwaters97@gmail.com. A portion of the email reads as follows:

> Well it's not arson to burn down your own home. I admitted to it so it's not like we are committing Insurance fraud. So insurance won't pay for it. We are stuck with the bill. Well you are now due to me committing suicide. But you wish you had that talk now or tried to help when I was begging. But nope you did what you do best ignore everything. Good luck with life. You are now stuck living in wallowa trying to recoup a house that is destroyed. Living with what you did to me and me being a reminder everyday of how you ignored me. Later gator.

---

[5] The date on the photographs is incorrect. BPD confirmed that the fire took place in November of 2020, and not April of 2020.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 11

On November 12, 2020, A.W. contacted Boise Police Department to report that she saw the Defendant in a vehicle near her parent's neighborhood in Boise. A.W. reported that she saw the Defendant being driven in a vehicle by one of his friends.

On November 22, 2020, A.W. received an email from joelwaters97@gmail.com with the subject line "Divorce." A portion of the email reads as follows:

> Yet again you still knew divorce meant my death I made sure over and over you knew this. You took my life A.W. I hope you never forget that. YOU TOOK MY FUCKING LIFE !!!!!! Goodbye I'm outta this fucking world you won whatever war you were claiming on me. Good luck with you future endeavors.

### *State stalking charges are filed against the Defendant*

On November 19, 2020, the Ada County Prosecutor's Office filed a complaint against the Defendant charging him with one count of felony stalking in the first degree. An arrest warrant was issued on the complaint.

On November 23, 2020, A.W. contacted Boise Police Department to report that she located a box of items at the front gate of her parent's residence. The officer who responded looked at the box and saw that it contained pictures of A.W. and the Defendant. Located on top of the box was a bag of A.W.'s clothing. A.W. said she did not see who placed the box at the residence, but said she was certain it was the Defendant.

### *Law enforcement determined that the vehicle A.W. was driving had a tracker*

On December 15, 2020, A.W. contacted BPD to report that both of her dogs had been taken out of her mother's Saturn that she had been driving. A.W. stated that she was parked at the Home Deport on Federal Way and had left the windows slightly down for the dogs. A.W.'s mother informed BPD that following the incident, she received a text from the Defendant that said: "So I was at home depot and seen your car with my dogs. So if [A.W.] wants piper I

suggest she better bring me back my pickup. I look forward to hearing back from you on a trade. I headed back to oregon now so you need to let me know before I get to Washington."

BPD was concerned because the dogs were taken while A.W. was parked in a public place. BPD told A.W. to take her vehicle to a trusted mechanic to see if a tracker or GPS device had been placed on her vehicle. On December 17, 2020, A.W. took the vehicle to Mountain View Service and called BPD to inform them that a tracking device was located on the passenger side of the vehicle near the passenger side tire. A BPD Detective responded to Mountain View Service and confirmed with Mountain View Service that they had indeed located a tracking device on the vehicle.  The tracking device appears to have been made using a Gizmo smart watch.

### *A.W.'s home in Oregon is started on fire for a second time*

On December 22, 2020, the divorce between A.W. and the Defendant was finalized. A.W. was granted the Nissan truck, the home in Wallowa, and the dogs. The Defendant was awarded the Red Ford Escape. That same day, A.W. received an email from the Defendant containing a screenshot of the divorce decree. Also, the same day there was a second fire at A.W.'s home in Wallowa. Authorities in Oregon informed BPD that the fire was so hot, it was unable to be put out and the house was burning to the ground.

On December 23, 2020, A.W.'s dog that the Defendant had previously taken from her mother' vehicle was returned to the front yard of her parent's residence in Boise. A camera installed at the residence shows the Defendant returning the dog to the residence. A.W. received several phone calls and voicemails from the Defendant. In one voicemail, the Defendant stated "you might want to check the front door." In another voicemail, the Defendant stated "through this whole thing, you haven't said a word to me even though you know I was trying to kill

myself which shows that you wanted me to kill myself or you just never gave a fuck about me! That makes you a horrible person and you've been trying to get me to kill myself and that is just wrong. I hope you live with this the rest of your life." A.W. identified the Defendant as the person who left her these voicemails.

BPD arrested the Defendant on the outstanding arrest warrant on December 24, 2020. Law enforcement located the Defendant near one of his friend's houses in Boise. Law enforcement located the Red Ford Escape that was previously taken from A.W. parent's home parked near the Defendant's friend's residence with a trailer attached to it. It appeared that someone had been living in the trailer. The registration for the Red Ford Escape had been transferred into the name of the Defendant's friend. The vehicle and the trailer were impounded following the Defendant's arrest. When the Defendant was arrested, he had an Idaho driver's license and three credit cards belonging to A.W. in his wallet. When the Defendant was arrested, he was interviewed by a BPD officer. The Defendant denied being involved in the arsons of the home in Oregon.

### *A.W. reports an arson of the Nissan Titan*

On December 28, 2020, A.W. contacted BPD to report that someone had set fire to the Nissan Titan that she had been granted in the divorce. The vehicle had been parked at the mechanic's shop since October 28, 2020, when A.W. left it there. BPD observed that a fire had been started in the cab of the truck. Staff at the mechanic's shop stated that the last time that they observed the vehicle undamaged had been on December 17. It is unknown exactly when the vehicle was set on fire. Photographs of the vehicle are attached to this Memorandum as Exhibit 2.

### *BPD Executed a Search Warrant on the Red Ford Escape*

On February 1, 2021, BPD executed a search warrant on the Red Ford Escape and the trailer that were impounded when the Defendant was arrested. Inside of the Red Ford Escape, BPD located paperwork with the Defendant's name on it, an empty box that appeared to have previously contained a pet tracker, tools, electronic devices, a pellet gun, a black backpack containing latex gloves, and roll of plastic wrap. Inside of the trailer, BPD located a white nylon rope, a set of brass knuckles, a magnetic key box, a partial roll of duct tape, tools, and an empty Gizmo watch box.

### *A.W. fears for her safety*

On several occasions during her contact with BPD, A.W. has expressed that she fears for her safety. She has expressed that she firmly believes the Defendant can, and will, hurt her. She reported that she is frightened by the Defendant and his behaviors. A.W. also reported that the Defendant has been suicidal and has mentioned that he will take her out, make her pay, make her suffer, and he can't live without her. A.W. has prepared a statement for the Court regarding her fears if the Defendant is released.  Her statement is attached to this Memorandum as Exhibit 3.

### ARGUMENT

The Bail Reform Act provides that a judicial officer shall detain a defendant pending trial where "no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e). Detention is appropriate where a defendant poses either a danger to the community or a risk of non-appearance and it is not necessary to prove both.  *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  The Government must establish by clear and convincing evidence

that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant is a risk of non-appearance. *Id.*

In determining whether pretrial detention is appropriate, Section 3142(g) provides four factors for the Court to consider: (1) the nature and circumstances of the offense charged, including whether the offense charged is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release. *See United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); 18 U.S.C. § 3142(g).

At the detention hearing, the Court may properly rely upon a proffer by counsel in determining a defendant's danger to the community or risk of flight. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay."). The Government may proceed in a detention hearing by proffer or hearsay, as a defendant has no right to cross-examine adverse witnesses who have not been called to testify. *See United States v. Winsor*, 785 F.2d 756 (9th Cir. 1986). A magistrate may "rely upon investigatory descriptions of evidence (and similar hearsay) where the judicial officer reasonably concludes that those descriptions, reports, and similar evidence, in the particular circumstances of the hearing, are reliable." *See United States v. Acevedo-Ramos*, 755 F.2d 203, 207 (9th Cir. 1985). "Bail hearings are typically informal affairs, not substitutes for trial or even for discovery. Often the opposing parties simply describe to the judicial officer the nature of their evidence; they do not actually produce it." *Id.* at 206.

> Further, the Magistrate or judge possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question. Through sensible exercise of this power of selection, the judicial officer can make meaningful defendant's right to cross-examine without

unnecessarily transforming the bail hearing into a full-fledged trial or defendant's discovery expedition.

*Id.* at 207-208.

I.   <u>The Nature and Circumstances of the Offenses Charged</u>.

The nature and circumstances of the offenses weigh in favor of detention. The Defendant repeatedly engaged in harassing, threatening, and disturbing behavior toward A.W. The protection order that A.W. obtained in Oregon did not deter the Defendant from repeatedly contacting her through email or from going to the protected addresses in Oregon and Boise. The Defendant engaged in a disturbing course of conduct that involved the severe destruction and theft of A.W.'s property including her vehicles, her home in Oregon, her dogs, and her electronic devices. The nature of the emails that the Defendant repeatedly sent to A.W. are concerning. The Defendant consistently threatened suicide and informed A.W. that his death would be her fault. The Defendant's conduct was clearly designed to cause A.W. emotional distress. When the Defendant was arrested, weapons, rope, duct tape, and gloves were located in the vehicle and trailer in which he appeared to be living. If released, the Defendant poses a danger to A.W. The fact that the protection order issued in Oregon did not deter the Defendant's conduct suggests that the Defendant will not abide by any pretrial release conditions set by the Court that would prohibit him from contacting A.W. The Defendant poses a risk to A.W.'s safety.

Moreover, the Defendant is also a risk to himself. In the emails to A.W., the Defendant repeatedly threatens suicide. A suicidal defendant poses a risk of flight. *United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007) (recognizing it is "logical" to "treat suicide as a form of flight");*United States v. Workman*, 680 Fed. App'x 699, 702 (10th Cir. 2017) (stating suicide is one way that a defendant can fail to appear for court); *United States v. Tropiano*, 296 F. Supp.

284, 286 (D. Conn. 1968) (finding a defendant's statement that he would take his own life rather than serve a lengthy prison sentence evidenced a risk of flight). Thus, the nature and circumstances of the offense weigh in favor of detention.

II.     The Weight of the Evidence Against the Defendant.

As detailed above, there is a plethora of evidence establishing the Defendant's guilt.  The Defendant emailed A.W. from his personal email accounts. In the email communications, he admitted to setting fire to the house in Oregon and admitted that he had installed tracking devices on the vehicles. The evidence paints a clear picture that the Defendant intended to target A.W. as retaliation for her deciding to leave the relationship.  The weight of the evidence supports an order of detention.

III.    The Defendant's History and Characteristics.

The Bail Reform Act directs the Court to consider "the person's character."  18 U.S.C. § 3142(g)(3)(A).  The Defendant's history and characteristics are concerning. As set forth above, the Defendant has repeatedly discussed committing suicide. It also appears that he has a history of substance abuse. The Defendant's substance abuse issues combined with his apparent mental instability make him a danger to himself and the community.

Moreover, the Defendant has a concerning criminal history. Although many of his criminal convictions are older, the nature of the convictions are concerning. The Defendant has criminal convictions for criminal trespass, malicious mischief, assault, and disturbing the peace. These convictions are similar in nature to the offense charged. Furthermore, although the Defendant was never charged with a criminal offense, his ex-wife reported him to the police for slashing her tires and for violating a protection order. This history is concerning.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 18

The Defendant also has convictions related to substance abuse, including driving under the influence and possession of marijuana. He also has a felony forgery conviction and several arrests for failure to appear. The Defendant's criminal history establishes that he is a risk to the community and poses a risk of flight.

IV.    <u>The Nature and Seriousness of the Danger Posed by the Defendant's Release</u>.

If released, the Defendant would pose a significant risk to the community, especially A.W. The Defendant has used a variety of ways to harass and intimidate A.W., including emails, telephone calls, surveillance, and physically visiting her residences. There are no conditions that would mitigate the risk the Defendant poses to A.W. The Defendant's criminal history and the fact that the Oregon protection did not deter him from harassing A.W. establish that he is unlikely to follow any pretrial release conditions ordered by the Court. Moreover, even if the Court were to order location monitoring, this condition would not sufficiently eliminate the risk to A.W. given the various tactics the Defendant has used to find and contact A.W. It would also only alert U.S. Probation to a potential problem after the fact. Put simply, the Defendant should not be allowed the opportunity to further target A.W.  The nature and seriousness of the danger posed by his release is too significant to merit consideration.  As such, he should be detained.

<u>CONCLUSION</u>

For the reasons stated herein, the defendant is a danger to the community, and no condition or combination of conditions will reasonably assure the safety of the community or his appearance in court.  Accordingly, the government respectfully requests that the Court order the Defendant detained pending trial.

Dated this 27th day of April, 2021.

RAFAEL M. GONZALEZ JR.
ACTING UNITED STATES ATTORNEY
By:


*/s/ Kassandra McGrady*
KASSANDRA MCGRADY
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 27, 2021, the foregoing **GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Charles F. Peterson, Jr.<br>Federal Defender Services of Idaho<br>702 W. Idaho Street, Suite 1000<br>Boise, Idaho 83702<br>chuck_peterson@fd.org | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |

/s/ *Mackenzie Mckague-Dunlap*
Legal Assistant

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION - 21